We'll move on to the second case set for argument, which is Richard Harris Law Firm v. State Farm Fire and Casualty Company, case number 24-2047. Good morning. May it please the Court. My name is David Clark, and I'm here representing the appellant, Harris Law Firm. This, I'd like to reserve two minutes of my time for rebuttal. This is a contract coverage dispute of insurance policy, a liability insurance policy that has an exclusion for property damage, stating that property damage will not be covered for personal property that is within the custody, care, and control. I think the word is or. Or control, correct. If it were and, this would be a different case. Certainly, Your Honor. And we submit that the issue here is whether or not that exclusion is triggered, custody, care, or control, when there was no custody, care, or control by the insured prior to the tort that caused the injury. Tell us how, I mean, how was there not control? How was there not control in this case? They moved the plane. They had, they lifted up the garage door that ultimately came down on it. They had the garage door opener to lift back up the garage door. How is that not control? There was no entrustment by 702 PC, the owner of the aircraft. There was no course of dealing between the two parties that they could move it. The bright line, undisputed evidence, for a year, is that they had nothing to do with the plane. They had nothing to do with it at all. When you say they, what do you mean? Who's they? They had no control. Harris Law Firm. And these were not employees of the firm? The two were employees of Harris Law Firm, correct. So, how do you say they had no control over them? I mean, they were employees. They were employees of the firm. They moved the airplane. Yes, but. I don't understand your argument. Let me explain. I apologize. Yeah. The plane was owned by 702 PC.  It's a separate entity. Yes. It owns the plane. It operates the plane. It has complete and solitary control over the plane. It pays for the hangar. It hired the pilot. The bright line agreement between the parties is that Harris Law Firm or its personnel would have nothing to do with the plane at all. They wouldn't touch it. They wouldn't move it. They wouldn't care for it. And here, they violated that agreed standard of care when they moved it. Why did the Harris employees move it then? I mean, that's a pretty big deal. If you don't feel like you have implied right to move it, moving an airplane is no small measure. But they did it, right? I would agree, Your Honor. They did do it. But it was the act of touching it and moving it that was the tort. And the case law talks about the sequence, that the property acquired is subjectively damaged, meaning that the case law talks about, I agree to take custody, care, or control of the property, or we agree that I have a right to do so. And in so doing, I then damage it. Here, there was no agreement that I could touch it, that my employees could touch it. As I read the policy, it doesn't say legal authority to control. It just says control. And they controlled the aircraft. That is to say they moved it. If I'm driving my car and I run into another vehicle and drive it into a ditch, I've certainly controlled it. I've certainly moved it. But I did that in the course of committing a tort. And they did that here. Yeah. That doesn't mean they didn't control it. And this is not an accident. They did it on purpose. They did. They breached the standard of care by doing so. They deliberately moved the airplane. They did it on purpose. They knew what they were doing. And it seems to me that under any ordinary understanding of the word control, they exercised control. Now, they might have not been allowed to do it. They may have done it improperly. But they exercised actual control. They exercised actual control as part of the tort of damaging it. Yeah. And I would submit that the case law and the case law that the court relies upon, the Global case, the Essex case, talk about there's a prior right of access. There's a prior right of control. And that was not present here. There was no prior control. It's a liability policy, as counsel points out. It's a liability policy. So it's third-party facing. It's my liability to a third party. That coverage does not apply if it's something that I have personal control over or custody. In this case, up until the point when they touched it, they had no personal control over it. It was the act of moving it and touching it that was the tort and it was the breach of the duty. That was the control, right? Yes. And to follow up on Judge Butcher's question, I mean, how can you say with the plane being in the law firm's hangar, even though there's an agreement, I understand there's an agreement, that they didn't control, have control over the plane? Again, the case law, there was a lot of talk about the court, and we said it in our brief, talks about a prior right to control, a prior agreement to control. There was none of that here. Their control was the tort. And in the end, it comes down to it. But it was their hangar. It was not their hangar. Whose hangar was it? The hangar was leased by the law firm. The hangar was leased by 702 PC. Harris Law Firm started the process, but then for a year, 702 PC – But Harris Law Firm had documents in the hangar. Correct. So I mean there's some duality here. I mean you're sort of making a very formalistic argument, and yet there wasn't actually any formalism that was honored in this. I mean did the law firm pay 702 for the space that they alleged that they were using? I don't have an answer to that question. So I mean it's basically – here's the problem. You have – you might have a better case if they had entered something that was truly just owned and operated by 702, but that's not the case here. There was a commingling of space and property, and I don't think they would have moved it if they didn't think they had an implied authority to do so. You're right. I don't think there's anything in the evidence of the record that supports that. No. The evidence is that they moved it. I mean my heavens. Were these lawyers or paralegals? They were non-paralegal staff. They were paralegal staff. No, they were staff. I want to go back to the question. Richard Harris, partner in the Harris Law Firm, correct?  Leased the hangar. Originally, yes, to get the project started. Okay. I understand it. He leased the hangar. But 702 took over the lease payments and was responsible for them. But who was on the actual lease? Harris. 702 PC. I take that back. It may have been Richard Harris, but 702 PC took it over. So they had an agreement with 702 PC, which was also the LLC formed by Mr. Harris. Was it not? He was part of the LLC.   It seems to me, as Judge Nelson has said, there's a lot of commingling here that the Harris Law Firm, who had the insurance with State Farm, had control. There were separate legal entities, and they had separate defined scope of authority and duties. And that is undisputed. There was no commingling of interaction between Harris Law Firm and the plane. The policy was hands off the plane. The agreement was hands off the plane. And there were bonafide separate legal entities that each got insurance from State Farm that gave each of them the policy. But the problem is it wasn't honored as carefully as you're trying to pitch it. I mean the law firm put the property in there, and they didn't pay them for it. So they treated it – I mean the standard of how it was being treated doesn't fit the model that you're now saying. I mean I understand why you're saying it. $750,000 is on the line, and it's an argument, but it doesn't go with how this was actually operated, it seems. In fact, it did go with how it was operated because the uncontested evidence is that 702 PC handled the plane. Harris Law Firm handled the files. Richard Harris handled his personal property. There was no overlap. There was no commingling of those responsibilities, duties, or activities. There was a separate and a part. And the case law talks about the right of access. The case law talks about picking a possessory of the equipment. But it doesn't support that. It says there must be some custody control or care prior to the damage being inflicted. And in this case, yes, they took control and they damaged the property. But that's the only time they took control. It wasn't legally authorized. I mean you're not contesting that they had control over the property, the plane. You're saying that control was not authorized. That's why it doesn't count. Correct. That control was the tort. And I would submit to you honestly that at least an absurd result. If I buy property insurance, liability property insurance for third parties, and if it's my tort of damaging the property that triggers the exclusion, what have I purchased? Everybody asserts control over a property that they damage. All right. Okay. That's a good place. Let me ask you this. Under Nevada law, which controls here, do we begin our analysis of the insurance policy by looking at the text of the policy, or do we look at the party's reasonable expectations regarding coverage? Insurance policies are adhesion contracts, so they're interpreted broadly to afford coverage. Exclusions are narrowly interpreted, must be unambiguous to a layperson. All right. What about the reasonable expectations of the parties? The court will not rewrite a policy. They will hew to the reasonable expectations of the parties. And in this case, Harris Law Firm sought third-party liability protection for its own torts of property damage. For personal property, it did not control, care for, or have custody of. And that's exactly what this case is. They did not have any custody, care, or control prior to when they damaged it. There was no course of dealing in that regard. But you don't dispute that they had actual control, that they actually moved the airplane. They moved it without authority. I understand that, but I'm asking the question of actual, not authoritative. They had actual control of the airplane. They physically moved it. You don't contest that. They did physically move it, but that was the tort. That was the breach of the duty of care. Well, yeah, but that wasn't actually the tort. The tort happened later. I mean, that's an interesting question, whether if they had done it in the moving process, would that have changed it? Or if something negligent, you know, if they didn't intend to touch the property, but somehow, you know, they drop a file box on the airplane and cause damage, then I think you'd have more of a case. But here, they actually exercised control before the damage was done. I think the district court's order talks about that fact, that they had control. But the district court's order also talks about the fact that they exercised their right to access the airplane. And they had no right to do that. If you want to call it a trespassing challenge, you can do that as well. But, you know, if the policy had said and instead of or, I might agree with you. And if the policy said control, exercise pursuant to a right to control, I might agree with you. But the word is control without any particular qualification. And it seems to me the word control under the regional expectation is physical control. Why is that the wrong interpretation of the policy? Because the case law, thank you for that question. Because the case law talks about possessory control that's been granted or asserted. And they had no possessory control. They had no authorization to do so. That's the control, that's the possessory control. It was in their control, in their possession by agreement of the parties or in the scope of their business. And here that was not the case. I just don't read the policy as saying this has to be authorized control instead of just control. Okay. Those are my other questions. You can reserve time. I'll remain here for my time. Thank you. Good morning. May it please the Court. Gina Winsmore on behalf of State Farm Fire and Casualty Company. State Farm requests that the Court affirm the district court's order on summary judgment that State Farm owes no liability coverage obligation to Harris Law Firm for damage to the aircraft because of the applicability of the care, custody, or control exclusion clearly stated in the business liability policy. The undisputed facts, clear and unambiguous policy exclusion and common law require affirmance for the following reasons. It's undisputed that Harris Law Firm employees exercised intentional, knowing, and exclusive possessory control over the aircraft when the incident happened. It's undisputed that Harris Law Firm employees had a right of unrestricted and unsupervised access to the hangar and all of its contents including the aircraft when the incident happened. So tell me about that undisputed part because that's not what we're hearing today. They're saying it is disputed at that point. Well, the argument for the Harris Law Firm is that there was some unwritten bright line agreement that these facility employees would not go near the plane. But what we know from the facts is that these employees took it upon themselves to – and have the knowledge and expertise and ability to remove wheel chucks, to hook up an electric dolly to a $5 million plane. And is there evidence they'd done that before? There is no – the employees' depositions were not taken. What we know from Mr. Harris is that as far as he knows, it was not done before. But we also know from Mr. Harris that it was done and moved multiple times on that one occasion. Mr. Harris' own testimony is that – and this is in the record, Volume 2 at 99. The aircraft was dollied out onto the taxiway in between two rows of hangars. It would have been pulled out 20 to 40 feet to clear the hangar. At lunch, Mr. Rasmussen decided to get it out of the way of the other hangars, and he decided to pull it back into the hangar. But Mr. Mendoza said if he did that, he couldn't – Mr. Mendoza couldn't continue to remove all the items. It would block his ability to move items from the hangar. And so they moved it – they came to the agreement to move it partly back in so Mr. Mendoza could continue to remove things like an RV, ATVs, a truck, as well as the law firm file materials. Oh, they were also moving those other things out. Correct. They weren't just law firms. That's right. Were those other things owned – the RV and – were those owned by the law firm? Were those owned by Mr. Harris? By Mr. Harris personally. So this was – the blurring of the lines was significant here. This was a hangar that was leased originally by Mr. Harris personally. The lease agreement continued in his name through the incident. Mr. Harris initially paid the lease payments through Harris Law Firm, but he stored personal items. His testimony is it included a truck, an RV, ATVs, as well as law firm files there. And then during the course – about six months after the airplane was acquired, then the lease payments began to be paid by the LLC. But there was no change in the contractual lease agreement or ownership. But Mr. Harris had acquired a new hangar and was moving everything into the new hangar. Interestingly, the new hangar wasn't acquired by 702 PC either. It was acquired by another LLC of Mr. Harris'. So the blurring of the lines is very significant. But also significant is that these employees – The plane was titled, I guess, in the PLC. Also very interesting, the plane was owned by 702 PC LLC. The only members of 702 PC were Richard Harris personally, Richard Harris Law Firm, and Mr. Harris' two other principal partners, his son Joshua Harris, through his professional corporation and another partner, Benjamin Cloward. Who was the policy issued to? The policy was issued – so the State Farm Fire Company was issued to Harris Law Firm. And additional insureds on that policy included Mr. Harris personally and obviously his employees under these circumstances. But the control issue is such a – So since Harris was on the policy personally. Harris – well, he was considered an additional insured. And I do believe his name was specifically indicated in the policy. But the policy ultimately was issued to Richard Harris Law Firm. So you issued the policy to the Harris Law Firm. What is your argument that the Harris Law Firm had control of the hangar when the hangar was Mr. Harris'? Well, the Harris – well, because it is that blurring of the lines that Mr. Harris had his own personal items there. The law firm had their files. And Mr. Harris used his facility employees to move both his personal items and his law firm items. His facility – what does that mean? Were these law firm employees? These were law firm employees. That's right. And that's why Mr. Harris has brought this claim against State Farm under his business liability policy. His allegation is that his employees were negligent. Caused harm to something – to a third party's property. Correct. Caused harm to a third party's property, which uniquely Mr. Harris was the managing member of that third party. Say that one of the employees had gone – you know, they were going out on lunch. They wanted access to a car. They didn't have one. They steal a car. Steal a car in front of the law firm and they drive and they wreck the car. You would not cover that, I take it, because you would say that employee had custody or control over that car. Correct. Correct. Under these circumstances, Mr. Harris tasked his employees to go and clear out the hangar. In order to clear out the hangar, the employees had the knowledge and the ability to move the plane and the necessity of moving that plane in order to move these large objects. We know from his own testimony – But my point is, I mean, they seem to be saying, well, this was a negligent act, which sounds like a – I mean, it was a negligent act. Sure. But that's not part – that doesn't get them out of the exclusion because – I mean, the hypothetical I gave, and I guess I'd be interested in hearing about this on rebuttal. You could have the employees commit a negligent act, but that doesn't – I mean, in the hypo that I gave where they steal a car and they wreck the car, they also didn't have legal custody.  Well, no, they did have control. They didn't have legal control, but they had control, and you're saying you wouldn't cover it. Sure. Under these circumstances – so I actually thought about your particular hypothetical a lot as I was preparing because under what circumstances would there be coverage for negligent acts potentially of the employees? As I was thinking about it, the employees driving that RV and accidentally running into the plane is a very different circumstance, and separate and apart from them that the damage came from their control of the plane, from their taking care, custody, or control of that plane. And that was the hypo I tried to give. If they dropped something – I didn't realize there were other things. I'm not sure how much damage a file cabinet could do, but an RV could probably do some damage. And if they had done that negligently, then you would have covered it. That's right, because that's a different circumstance. I mean, I'm certain there would have still been some analysis as to whether or not the blurring of the lines of the hangar in particular and whether that care-custody aspect came into play, but that's not what we dealt with. Well, but under that scenario, it wouldn't have mattered. The blurring of the lines wouldn't have been – we would have asked the same question. Was there custody or care or control? And we presumably would have said there's no control over the airplane because they didn't touch it. In fact, they walked in and they said, we can't touch it. Right. Well, yeah, under these circumstances, what the lower court dealt with and what State Farm had to deal with in addressing coverage was that control aspect of the plane, and it wasn't just the one motion of moving it out, as we know, and I offer to the court. You – as I understand it, there was damage to the – there was actual damage to the plane. That was repaired under a – but that was a different policy? It was a different policy, and I think there might have been a misrepresentation even in our brief, but there was some confusion between the two briefs. State Farm was not the insurer for the airplane. There was a separate insurer. There was about $188,000 of damage to the airplane from this incident. That was paid, and Mr. Harris or 702 PC was compensated for that damage. So once they were compensated for that, about six months later, Mr. Harris made the decision to sell the plane, and when he sold the plane, he – his allegation is I had to sell it for less because it had this preexisting property damage, and I – the claim to State Farm was for the diminished value of the plane that he alleged was the result of the negligence of his employees. Let me ask you this. As I understand the position of Mr. Clark, is that there's a difference under the policy between actual control and legally authorized control. How do you respond to that? Well, I would respond to it the way the lower court did, in that control doesn't necessarily require consent or permission from the owner. In this particular case, there was access that – and there's not testimony necessarily from the employees that they had been given this bright light standard. What we knew and what we know is that they understood that they had a – Sorry, go ahead. I'm not asking a factual question. I'm asking a legal question. Okay. Is there a difference for purposes of policy between actual control and legally authorized control? Thank you for that. No, there is not a difference under the policy. The policy exclusion doesn't have any sort of language that suggests that care, custody, or control requires permission or consent, which is the argument of Mr. Harris and the Harris Law Firm. Thank you for that distinguishing question. With regard to this particular allegation, we've got – I mean, the lower court did a great job in its order summarizing custody, care, control, and addressing the issue of permission and permissive use or custody, and we've got a lot of case law. But what is – I think that what is so significant in this case is the fact that the insured, who is seeking to make a claim – essentially, the insured as a managing member of the LLC is making a claim against himself and alleging that he didn't give permission to his own employees to control this airplane. The other issue that I think that the Harris Law Firm brought up in their briefing had to do with the fact that the damage happened when nobody was present, where they weren't actually right next to the plane. And I think the case law submitted by the lower court or referred to by the lower court and in our brief establishes that the control doesn't have to be continuous to still qualify as control under the terms of the contract and case law. Do we know how the hangar started closing? Nobody knows. And does it matter? I don't think it matters. If there was a third party that came in and closed the hangar, would that – you would have still said, no, you had control over the airplane, so therefore, we're not going to cover it. Yeah, I think – I guess in fairness, that would depend on the third party. If the pilot came in and was in some way intervening in the placement or the situation of the airplane and closed the door, that might be a different set of circumstances – circumstances. Say that the airport just had like a safety mechanism that once a hangar is open for two hours or whatever, we're going to automatically close it out of safety and that operated. Then you'd say there was negligence from a third party. But that wouldn't change the control analysis. That's what's confusing. That's what I would get back to. The continuous control of Harris Law Firm employees would not have been interrupted by some mechanism by which the door would come down or if they had the opener in their pocket. But maybe there's something – but don't the employees have to have caused the harm for the exclusion to apply? Well, they caused the harm by leaving the aircraft under a moving door. And that ultimately caused the harm in this circumstance. And their control – Well, I don't know. That's why I'm asking my question about the hangar. It sounds like it doesn't matter. But it's not leaving it under that caused the damage. It's closing the hangar, the door that caused the damage. Well, it's putting it in a situation where peril could result, leaving a car or a hangar or an airplane under a movable door. While you are in control of that property is what caused the damage. And you created the risk by leaving it in a situation where peril could be afforded to that item. Just in closing, as I see my time running, unless there are any other questions, we would just conclude that the intentional, knowing, and exclusive possessory control of the Harris Law Firm employees resulted in the aircraft being in Harris Law Firm's care, custody, or control according to the terms. And State Farm would request that the court affirm the lower court's order granting summary judgment. As there are no genuine issues of material fact as to that issue of control at the time that the airplane was damaged, and that the lower court's order be affirmed. Thank you very much. I first respond to the contention that there was a blurring of the lines. These were two completely separate entities with completely separate responsibilities, completely separate scopes of authority, and a year, of course, in dealing where that was observed. But that was honored and that was practiced. So there was no blurring of the line. There was no allegation that he appears to corporate bail and that one was a wholly owned subsidiary of the other. There's no evidence of that in the court's decision. There is evidence of that. I mean, I don't know how you can say there's not evidence of that. He had personal property. He had law firm property. And he had the LLC property all in the same hangar that was paid for by different entities. There was no honoring of any corporate formalities here. No, there wasn't. There were bona fide corporate entities. There were, but there was no honoring of it. They had separate and distinct scopes of authority. And that's an undisputed fact. Does it matter? I didn't hear you, Your Honor. Does it matter? I believe it does. It shows that there was no custody, care or control by Harris Law Firm prior to. But you don't contest there was physical control of the aircraft by employees of the firm. As part of the tort there was. Well, why do you care whether it's part of a tort or not part of a tort? I'm just looking at the policy that says control. Because the case law, the Ferguson case says or the Essex case said they have prior access, they have prior authority, they have prior right of access to the equipment. The global sterilization case says they had prior authority to own it. Those were different because they didn't have a key to the – if I'm remembering, this was the cleaning crew or am I thinking of a different case? That's the child time care. They didn't have actually access. They had to go to the owner to get access. They didn't have keys to even lock up. That doesn't appear to be the case here. I would say that child time care is very close actually on this case because they on their own without authority moved the furniture out outside and then left it there. And that was when it rained later. When the rain fell on it, that's what damaged it. But the court there said, no, they didn't have exclusive control at the time of the damage. But that's because they didn't have access to take it back in. They couldn't lock up. I don't believe that was the facts of the case. They just left it out there. I would submit then, Your Honor, that, again, if my employees commit a tort and do damage to someone else's property, and this was someone else's property, it was owned by a different entity, then I can buy coverage for that. I can buy property damage liability insurance. Under State Farm's reasoning, if I exercise any control over it, even in the course of that one tort, which you do all the time, every time you damage property, you exercise control over it, then the exclusion applies and I've bought nothing. It's an absurd result and I have no coverage under their rationing. Thank you. Thank you to both counsel for your arguments. The case is now submitted.
judges: FLETCHER, Fisher, NELSON